UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 22-CV-7759 (RER) (PK)

———————————

P‍aul M‍ilitello

versus

V‍isiting N‍urse A‍ssociation H‍ealth C‍are S‍ervices, I‍nc.

———————————

**MEMORANDUM & ORDER**

———————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff Paul Militello ("Plaintiff") brings employment discrimination and hostile work environment claims against defendant Visiting Nurse Association Health Care Services, Inc. ("Defendant" or "VNAHCS") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. (ECF No. 1 ("Compl.") ¶ 1). Before the Court is Defendant's motion for summary judgment. (ECF No. 42 ("Motion"); ECF No. 43 ("Mem.")). After carefully reviewing the record, and for the reasons set forth herein, Defendant's motion is granted, and the case is dismissed.

## **BACKGROUND**

I.   <u>Factual Background</u>

The following facts are not disputed unless otherwise noted. Defendant is a healthcare agency located in Staten Island, New York, and provides patients with health care services. (ECF No. 44, Ex. 1 ("Pl. 56.1")) ¶ 1). Plaintiff was employed by Defendant

from September 21, 1981, until his termination on July 21, 2022. (Compl. ¶ 11). Plaintiff served several roles from Junior Accountant to Director of Finance, the latter of which he held for over 15 years. (*Id.* ¶¶ 12–13). In November 1984, Plaintiff was promoted from Junior Accountant to Accountant. (Pl. 56.1 ¶¶ 5–6). In 1986, Plaintiff was promoted to Manager of the Finance Department. (*Id.* ¶ 7). In 2004, Plaintiff became Director of Reimbursement, but his duties remained the same. (*Id.* ¶ 8).

Defendant began using Microsoft Excel sometime around 2004. (*Id.* ¶ 9). The parties agree that Defendant provided some Excel training around this time. Plaintiff acknowledges he received outside training as well as in-house training sessions with the IT department (ECF No. 43, Ex. 5 ("Pl. Depo. Tr.") at 22), although he later confines this to only training "that allowed him to perform his duties as Director of Reimbursement." (Pl. 56.1 ¶ 10). Defendant's IT Department was also available for support if Plaintiff had questions about the use of Excel. (*Id.* ¶ 11). During this time, Defendant also utilized the following computer applications: (1) ADP for payroll data; (2) Great Plains for the general ledger; and (3) Netsmart for billing. (*Id.* ¶ 12). Training was provided for use of the latter two of these programs and IT Department support was provided for all three. (*Id.* ¶¶ 13–14).

In February 2018, Plaintiff's job title was changed to Director of Revenue Cycle, but again, his job duties remained unchanged. (*Id.* ¶ 15). In May 2018, Plaintiff's job title changed again to Director of Finance. (*Id.* ¶ 16). In that role, Plaintiff reported to the President and CEO and had one direct report. (*Id.* ¶¶ 17–18). He also prepared governmental reports and budgets, maintained Defendant's third-party contracts with

2

insurance companies, and provided his supervisor with requested financial information. (*Id.*).

In 2019, VNAHCS planned to merge with Richmond University Medical Center ("RUMC") to take effect on January 1, 2022. (*Id.* ¶¶ 19–20). On December 9, 2019, Defendant hired Hope Iliceto (born in 1960) as President, Chief Executive Officer, and Plaintiff's direct supervisor. (*Id.* ¶ 2). Iliceto was the facilitator of the merger, which required sharing of financial information between VNAHCS and RUMC. (*Id.* ¶¶ 21–22).

On June 16, 2020, VNAHCS hired Rose Marie Belfini (born in 1959) as Senior Director of Budget and Finance and Plaintiff's direct Supervisor. (*Id.* ¶¶ 3, 25). From January 1, 2018, through September 18, 2020, Defendant employed John McNamara (born in 1956) as Director of Accounting, reporting directly to the President and CEO. (*Id.* ¶ 4). McNamara resigned, and instead of filling his position, Iliceto assigned some of McNamara's duties to Plaintiff. (*Id.* ¶¶ 26–27). These additional duties encompassed preparing certain financial statements and journal entries, updating the general ledger, and the overseeing and reconciliation of certain accounts. (*Id.* ¶ 28). These duties required Plaintiff to use the same programs as before, as well as "advance functions of Microsoft Excel," that Plaintiff could not perform. (*Id.* ¶¶ 28–31). These functions included the application of formulas and import of data from other systems. (*Id.* ¶ 31).

Belfini created several examples, or template spreadsheets, that Plaintiff could use to familiarize himself with the Excel functions. (*Id.* ¶¶ 32–33). The parties agree that Belfini showed Plaintiff how to use the templates and perform tasks in Excel, but Plaintiff did not find Belfini's less formal training style to be as effective as he needed. (*Id.* ¶¶ 34–36, 64–67). Plaintiff claims he was owed—and did not receive—formal, written instructions, and

objects to having to take his own notes. (*Id.* ¶ 34). Plaintiff struggled to use some of the functions, such as linking Medicaid cost figures into another report, which were mandated and audited by the New York State Department of Health. (*Id.* ¶¶ 37–41). Following an audit, Belfini had to correct Plaintiff's work because he did not submit the report to the State in the manner required. (*Id.* ¶¶ 37–41). Belfini also used the various programs to produce the required reports for meetings, which Plaintiff characterizes as "collaborative." (*Id.* ¶¶ 35, 60–61). Defendant characterizes this as Belfini having to take over Plaintiff's responsibilities because he was unable to perform them. (*Id.*).

On April 21, 2021, Defendant placed Plaintiff on a performance improvement plan ("PIP") at the direction of Ann Santoro (aged 81 years), the Director of Human Resources. (*Id.* ¶¶ 42–43). The purpose was to address "serious areas of concern . . . and gaps in Plaintiff's work performance, reiterate Department expectations, and allow Plaintiff the opportunity to demonstrate improvement and commitment" in his position. (*Id.* ¶ 45). The PIP included two steps, both of which involved the same kinds of reports described above and projected completion dates. (*Id.* ¶¶ 46–49; *see* Mem., Ex. 7). The written notices Plaintiff received were clear that failure to make regular progress, or failure to complete the PIP in a manner that met Defendant's expectations, could result in termination, but Plaintiff claims Belfini made verbal comments to the contrary. (*Id.* ¶ 54). At some point, VNAHCS provided instruction on the programs needed to perform these tasks from outside trainers, but Plaintiff argues this was not done for him during his PIP. (*Id.* ¶¶ 56). Like the meetings that occurred before the PIP, the parties dispute the degree to which Belfini had to perform certain tasks for Plaintiff, versus in collaboration with Plaintiff, during and after the PIP. (*Id.* ¶¶ 64–65). Plaintiff expressed dissatisfaction with the style of

4

training he received and the goals of the PIP, but did not make use of any publicly available tutorials for Excel. (*Id.* ¶¶ 64–67). The parties dispute the deadlines associated with the tasks in the second step of the PIP, but agree the PIP was set to end on June 21, 2021. (*Id.* ¶¶ 48–53). Plaintiff did not complete all the PIP's goals, and though some goals were completed, they were later than Defendant expected. (*Id.* ¶¶ 57–59, 62–63, 68).

Plaintiff was terminated on July 21, 2022, in a meeting with Belfini and Gloriann Walker (born in 1968), who was Santoro's replacement as Director of Human Resources. (*Id.* ¶ 70). Plaintiff claims the stated reason for his termination, that Defendant was "going in a different direction," was pretext for replacing him with a younger employee. (Compl. ¶¶ 14–15). At the time of filing the complaint, Plaintiff (born in 1959) was 63 years old. (*Id.* ¶ 11; Pl. 56.1 ¶ 5).

## II.     Procedural History

Plaintiff filed a complaint against Defendant with the New York State Division of Human Rights ("NYSDHR") and United States Equal Employment Opportunity Commission ("EEOC") on August 30, 2022. (Compl. ¶ 5).[1] Plaintiff filed his Complaint on December 20, 2022, alleging violations of the ADEA and the New York City Administrative Code § 8-107. (*Id.* ¶ 1). Defendant answered the Complaint on March 3, 2023, with fourteen affirmative defenses. (ECF No. 12 ("Ans.") at 6–9). The parties engaged in mediation and reported the matter as unsettled. (ECF Nos. 17, 20).

---

[1] Plaintiff described the NYSDHR complaint as an attachment to the Complaint in this matter, but no such exhibit was filed with the Court. These facts are not in dispute, though, as Defendant admits the filings with NYSHR and EEOC occurred. (*See* Ans. ¶ 5).

5

After the close of discovery, this matter was reassigned to the undersigned. (ECF No. 22; Order Dated 2/27/2024; ECF No. 23). On April 11, 2024, Defendant took the first step in dispositive motion practice and sought a conference to discuss its planned motion for summary judgment. (ECF Nos. 24–26). Plaintiff responded in a timely fashion. (ECF Nos. 29–31). The Court held a premotion conference on May 3, 2024. (ECF Nos. 32, 39). Defendant's motion was fully briefed on July 30, 2024. (Motion; Mem.; ECF No. 44 ("Opp."); ECF No. 45 ("Reply")).

## LEGAL STANDARD

I. Rule 56

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could find in favor of the nonmoving party. *See Animal Welfare Inst. v. Romero*, 718 F. Supp. 3d 252, 261 (E.D.N.Y. 2024). The moving party bears the initial burden of showing a lack of genuine dispute of material fact, and if that burden is met, the opponent to summary judgment must present the court with evidence showing the dispute is ripe for trial. *Id.*; *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009). "A party cannot defeat a motion for summary judgment with mere speculation and conclusory assertions." *Nguedi v. FRB of N.Y.*, 813 Fed. Appx. 616, 617 (2d Cir. 2020); *accord Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

II. ADEA Legal Framework

This Circuit applies the *McDonnell Douglas* burden-shifting framework to claims of age discrimination under the ADEA. *See, e.g., Downey v. Adloox, Inc.*, 789 Fed. Appx.

903, 905 (2d Cir. 2019) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *March v. First Choice Med. PLLC*, No. 17-CV-04272 (RRM) (SIL), 2021 WL 3006043, at *11 (E.D.N.Y. Jul. 15, 2021). At the first step, a plaintiff must establish a *prima facie* case of four elements: (1) protected class membership; (2) qualification for the position; (3) adverse employment action suffered; and (4) circumstances that give rise to an inference of discrimination. *See Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019); *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). If these elements are shown by a preponderance of the evidence, at the second step, the burden shifts to a defendant to articulate a legitimate, nondiscriminatory reason for disparate treatment. *Abrams* 764 F.3d at 251; *Meyer v. McDonald*, 241 F. Supp. 3d 379, 390 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018); *Hanley v. New York City Health & Hosps. Corp.*, 722 F. Supp. 3d 112, 120 (E.D.N.Y. 2024). At the third step, Plaintiff has the burden to show the defendant's proffered reason was pretextual, and discrimination was a "but-for" cause of the adverse employment action. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Hanley* at 722 F. Supp. 3d a 120.

III. <u>NYCHRL Legal Framework</u>

NYCHRL provides for a separate, broader, and more liberal construction to age discrimination claims, but "still requires a showing of some evidence from which discrimination can be inferred." *Famoso v. Marshalls of Ma., Inc.*, No. 12 Civ. 4863 (DLI) (VVP), 2021 WL 3006043, at *20 (E.D.N.Y. Sept. 30, 2015) (*citing Ben–Levy v. Bloomberg L.P.*, 518 F. App'x 17, 19–20 (2d Cir.2013). Burden shifting applies here as well. *Sabic-El-Rayess v. Tchrs. Coll., Columbia Univ.*, No. 24 Civ. 2891 (JMF), 2024 WL

7

4988408, at *4 (S.D.N.Y. Dec. 5, 2024). At the first step, a plaintiff must show differential treatment due to a protected characteristic, *Famoso* 2021 WL 3006043, at *10; at the second step, a defendant may proffer legitimate reasons for its actions. *Id.* The question for the court at summary judgment is whether any reasonable jury could find defendants reasons were pretextual, or that the complained action was at least in part due to discrimination. *See Marseille v. Mount Sinai Hosp.*, No. 21-2140, 2022 WL 14700981, at *1 (2d Cir. Oct. 26, 2022).

## DISCUSSION

I. Plaintiff's ADEA Claim Does not Survive Summary Judgment

    A. Plaintiff's Prima Facie Case Lacks an Inference of Discriminatory Intent

Plaintiff faces a low bar to make a *prima facie* case of the elements, but still "must establish but-for causation." *See Matias v. Montefiore Med. Ctr.*, No. 20 Civ. 2849 (VEC), 2022 WL 4448585, at *5 (S.D.N.Y. Sept. 23, 2022) (first citing *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019), then citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). Here, two elements are uncontroverted. Plaintiff's age of 63 places him in a protected class of those over 40 years of age, and his termination was an adverse employment action. 29 U.S.C. § 631(a); *Hatch v. Brennan*, 792 F. App'x 875, 880 (2d Cir. 2019); *see also Gorzynski*, 596 F.3d at 107. However, the parties dispute the but-for cause of Plaintiff's termination: whether he was terminated because of poor performance, or because of his age. (Pl. 56.1 ¶ 69). A court may infer discriminatory intent as the cause of an adverse employment actin from either: "the employer's criticism of the plaintiff's performance in [protected class related] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees

8

not in the protected group; or the sequence of events leading to the plaintiff's adverse employment action." *Meyer*, 241 F. Supp. 3d at 390 (*quoting Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)) (cleaned up).

The only evidence Plaintiff cites for his suspicion that Defendants meant they wanted to "get younger" when they said they were "going in a different direction" is his own age, the age of his replacement, and his deposition testimony. (Comp. ¶¶ 15–16, 20; Pl. 56.1 ¶¶ 71, 74; Pl. Depo. Tr. at 94–95). Of course, Plaintiff's speculative statements as to the reason for his termination are simply not enough to survive summary judgment. *See Deebs v. ALSTOM Transp. Inc.*, 346 Fed. Appx. 654, 656 (2d Cir. 2009); *Nguedi*, 813 Fed. Appx. at 617. Second, those who terminated Plaintiff—Belfini, Iliceto, and Walker—were all over the age of 50 at the time, evincing an "additional hurdle" for Plaintiff to clear on the issue of discriminatory intent. *See Meyer*, 241 F. Supp. 3d at 390-391 ("When the person who allegedly discriminated against plaintiff is a member of the same protected class as plaintiff, the court applies an inference against discrimination."). Moreover, Santoro, who placed Plaintiff on a PIP, was older than Plaintiff at the time. (Pl. 56.1 ¶¶ 42–43). Finally, while the fact that someone younger replaced an older individual may suggest discrimination in some circumstances, it does not apply where, as here, the replacement was qualified. *March*, 2021 WL 3006043, at *13; *see also Meyer*, 241 F. Supp. 3d. at 391–92, 395–96 ("Employers have discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.") (*citing Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259, (1981)) (cleaned up); (Pl. 56.1 ¶¶ 71–73). In sum, the circumstances present here do not permit an inference of discriminatory intent.

B.  Defendant Proffers Legitimate,
    Nondiscriminatory Reasons for Plaintiff's Termination

Even if Plaintiff had met his burden, no material dispute of fact precludes the Court from finding, as a matter of law, there were legitimate and nondiscriminatory reasons to let Plaintiff go. See *Meyer v. State of N.Y. Off. of Mental Health*, 174 F. Supp. 3d 673, 685 (E.D.N.Y. 2016) *aff'd sub nom. Meyer v. N.Y. State Off. of Mental Health*, 679 F. App'x 89 (2d Cir. 2017). Plaintiff disputes certain aspects of his training and whether portions of the PIP were completed in a timely matter, but these disputes are immaterial. (Pl. 56.1 ¶¶ 48–53, 64–67). It is undisputed that Plaintiff could not perform the tasks required by his position, and to some extent, required by New York State. (*Id.* ¶¶ 35, 39–40). Defendant began using Microsoft Excel in 2004, a decade and half before Plaintiff–then the Director of Reimbursement–was put on a PIP. (Id. ¶¶ 8–9). Unfortunately, his performance did not meet Defendant's expectations, as required by the PIP, and his dismissal was a legitimate, non-discriminatory consequence. (*Id.* ¶ 54); *See McEvoy v. Fairfield Univ.*, 844 Fed. App'x. 420, 421 (2d Cir. 2021) (affirming summary judgment on ADEA claim where plaintiff was not rehired, but "failed to marshal evidence that the decisionmakers did not believe that her performance was deficient . . ."); *Downey*, 789 Fed. Appx. at 905-07 (affirming summary judgment and dismissing ADEA and NYCHRL claims where plaintiffs were fired for "not performing well at their jobs"); *Eidinger v. Primma, LLC*, No. 19-CV-3219 (NG) (RER), 2022 WL 17685444, at *11-12 (E.D.N.Y. Nov. 1, 2022) (granting summary judgement on ADEA and New York State Human Rights Law where plaintiff was terminated for "comparatively inferior performance"); *Famoso*, 2021 WL 3006043, at *14 (granting summary judgment and dismissal of ADEA and NYCHRL

claims in light of "thoroughly documented performance deficiencies and [plaintiff's] own admissions of his underperformance . . .").

        C.        <u>Defendant's Reason for Termination was not Pretextual</u>

Plaintiff fails to show that the reasons proffered for his termination were pretextual for the same reasons his prima facie case falls short—the Court cannot infer discriminatory intent from the evidence presented. As goes the adage often attributed to Mark Twain, growing older is a "privilege denied to many."[2] The position Plaintiff held was also a privilege. Obtaining the former and losing the latter, on its own, does not an ADEA claim make. *See March*, 2021 WL 3006043, at *13 (*citing McGuire-Welch v. House of the Good Shepherd's Tilton Sch.*, 720 F. App'x 58, 61 (2d Cir. 2018)).

III.        <u>Plaintiff's NYCHRL Claims Lack a Showing of Disparate Treatment</u>

Plaintiff's allegations do not meet the lower threshold applied to NYCHRL claims, either. The fact that Plaintiff was replaced by someone younger is not enough. *See Mingguo Cho v. City of New York*, 549 Fed. App'x. 15, 18 (2d Cir. 2013). Plaintiff does not point to a difference in training or treatment from his peers. *See e.g. Matias*, 2022 WL 4448585, at *12; *Ping Chow Wei v. Anthem Inc.*, No. 16 Civ. 0468 (SFJ) (AKT), 2018 WL 5622571, at *8, 12 (E.D.N.Y. Sept. 4, 2018). Plaintiff's age and termination also do not, on their own, make a case for age discrimination under NYCHRL. *see Boonmalert v. City of New York*, 721 Fed. Appx. 29, 33 (2d Cir. 2018); *Famoso*, 2021 WL 3006043, at *20.

---

[2] *See, e.g.,* John Grindrod, *Among all Spoken Words, Some are More Special*, The Daily Gazette, Nov. 24, 2023, https://plus.lexis.com/api/permalink/00cb5d16-2adb-4ee7-acc6-14d068877041/?context=1530671 (last visited 2/27/2025); Constance M. Constant, *A Privilege Denied to Many*, The National Herald, Sep. 16, 2022, https://plus.lexis.com/api/permalink/c490e7e8-07d8-4568-aa4f-0087ff6ff9e5/?context=1530671 (last visited 2/27/2025).

11

**CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment in favor of Defendant and close the case.

SO ORDERED.

Hon. Ramón E. Reyes, Jr.
Digitally signed by Hon. Ramón E. Reyes, Jr.
Date: 2025.03.31 11:58:07 -04'00'

_____
RAMÓN E. REYES, JR.
United States District Judge

Dated: March 31, 2025
         Brooklyn, NY